OPINION
{¶ 1} Appellant, Roger DiFrangia ("Roger"), appeals the December 9, 2002, Amended Division of Property Order issued by the Domestic Relations Division of the Trumbull County Court of Common Pleas. The division of property order, issued in the form of a qualified domestic relations order ("QDRO"), divides Roger's interest in the Ohio Police and Fireman Pension Fund between Roger and appellee, Patricia DiFrangia ("Patricia"), his former wife. For the following reasons, the decision of the Trumbull County Court of Common Pleas is affirmed.
 {¶ 2} Roger and Patricia were married on June 6, 1970, in Campbell, Ohio. Two children were born of their marriage, both of who are now emancipated. On March 17, 1997, Patricia filed a complaint for divorce in Trumbull County. On July 30, 1998, the trial court entered final judgment granting the parties a divorce. In its Findings of Fact, the trial court found that Roger has a pension with the Police and Fireman Retirement System and that Patricia has a marital interest in this pension. The court further found that Roger's pension had a present value of $495,297 and a present monthly value of $1,188. In its Conclusions of Law, the court reduced Patricia's interest in the marital portion of Roger's pension from fifty to thirty-six percent to offset the award of the marital residence to Patricia. In DiFrangia v. DiFrangia
(Oct. 22, 1999), 11th Dist. No. 98-T-0142, 1999 Ohio App. LEXIS 4974, this court affirmed the decision of the trial court granting Patricia and Roger's divorce.
 {¶ 3} On or about July 9, 2001, Roger retired from the Liberty Township Fire Department.[1] Thereafter, Roger moved the court to terminate or reduce his spousal support obligation. On August 23, 2001, the trial court approved a magistrate's order terminating Roger's spousal support obligation and ordering him to pay directly to Patricia "her percentage of the distribution from all monies received from the Police and Fireman's Pension after July 9, 2001, until a qualified domestic relations order (QDRO) is prepared and placed pursuant to state statute."[2]
 {¶ 4} On November 12, 2002, the trial court issued a Division of Property/QDRO. The QDRO provided that Patricia is entitled to thirty-six percent of a fraction of Roger's monthly benefit; that the fraction of Roger's monthly benefit to which Patricia is entitled is to be based on 26.75 years, representing the time that Roger was a member of the retirement program and married to Patricia; and that the monthly benefit amount used to determine the amount paid to Patricia shall be based on the amount that Roger is eligible to receive. On December 9, 2002, the court issued an Amended Division of Property Order/QDRO, identical in all respect to the QDRO issued on November 12, 2002, except that it includes "Alternate Payee" information for Patricia.[3] From this judgment entry, Roger timely brings this appeal.
 {¶ 5} Roger raises two assignments of error:
 {¶ 6} "[1.] Whether the Trial Court's decision allowing Appellee, the former wife, to have Appellant's pension re-evaluated and an amended QDRO filed thus entitling Appellee to benefits earned by Appellant during the 4 year period after the final divorce and issuing a Qualified Domestic Relations Order encompassing such extra-marital asset is void for lack of subject matter jurisdiction and is an abuse of discretion by the Trial Court.
 {¶ 7} "[2.] Whether the Trial Court erred as a matter of law, to the prejudice of the Appellant, by misapplying the rules governing the construction and interpretation of judgments."
 {¶ 8} In Ohio, it is well-established that "[p]ension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action." Erb v.Erb (1996), 75 Ohio St.3d 18, 20 (citations omitted). In the division of pension or retirement benefits, the Supreme Court has held that the "trial court must have the flexibility to make an equitable decision based upon circumstances of the case, the status of the parties, the nature, terms and conditions of the pension plan, and the reasonableness of the result." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 180. Accordingly, a "trial court has broad discretion when considering retirement benefits."Sprankle v. Sprankle (1993), 87 Ohio App.3d 129, 132. A reviewing court will not disturb a trial court's division of property in a divorce action absent an abuse of discretion. Middendorf v. Middendorf, 83 Ohio St.3d 397,401, 1998-Ohio-403. An abuse of discretion means that the trial court's division of property was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 9} In Hoyt, the Supreme Court recognized that, in dividing a pension or retirement benefit, a trial court "should attempt to preserve the pension or retirement benefit asset in order that each party can procure the most benefit," and that a court "should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." 53 Ohio St.3d 177, at paragraph two of the syllabus. It is not always possible, however, to serve both goals. In a case such as this one, where the pension benefits were vested but unmatured at the time of divorce, it may not be possible or equitable to effect a final division of retirement benefits. Where the pension is unmatured, the ultimate value of the asset is dependent upon future contingencies such as the participant's age and pension service credits at the time of retirement. Layne v. Layne (1992), 83 Ohio App.3d 559,566. In this situation, the Hoyt court held that lower courts could divide retirement benefits by deferred distribution through a QDRO.53 Ohio St.3d at 182. "When the amount to be paid can only be determined at the later point of maturity at retirement, a current order should divide and distribute only the right to receive a share of the unmatured pension benefit, reserving determination of the exact amounts to the later time when they are known." Layne, 83 Ohio App.3d at 566; Hoyt,53 Ohio St.3d at 182.
 {¶ 10} The general rule in Ohio is that a trial court does not retain jurisdiction to alter a division of marital property once it becomes final. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, paragraph one of the syllabus; R.C. 3105.171(I) ("A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court."). "[W]hile a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment." Murphyv. Murphy, 11th Dist. No. 2001-T-0147, 2002-Ohio-7277, at ¶ 15, quoting Gordon v. Gordon (2001), 144 Ohio App.3d 21, 23. Where an unmatured pension or retirement benefit is concerned, the trial court may also reserve continuing jurisdiction over the distribution of this asset. Doolin v. Doolin (1997), 123 Ohio App.3d 296, 300, citing Hoyt,53 Ohio St.3d at 182 ("In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured.").
 {¶ 11} Roger argues under his first assignment of error that the trial court exceeded its jurisdiction to modify the original marital property division by filing an amended QDRO four years after the original division. In the original division, the court determined Roger's pension to have a monthly value of $1,188. After his retirement and pursuant to the court's judgment entry, Roger continues, a QDRO was prepared dividing the pension under which Patricia was to receive a monthly benefit in the amount of $427.68. Thereafter, "the Court allowed [Patricia] to have [Roger's] pension to be re-evaluated and file an Amended QDRO which would result in Appellee receiving significantly more than what the Court originally ordered."
 {¶ 12} There are several problems with Roger's position. To begin with, it is uncertain which QDRO Roger refers to as setting Patricia's share of the monthly benefit at $427.68. The final judgment on July 30, 1998 did determine the monthly value of Roger's pension at that time to be $1,188, but that entry also stated that "the parties further agree that a QDRO will be issued on said pension if ever possible." Specifically, the trial court found that "if a QDRO is not made available to give [Patricia] her marital interest in [Roger's] Police and Fireman Pension, [Patricia] shall receive her marital portion in [Roger's] pension in monthly payments when [Roger] begins to receive his payments. * * * After adjusting [Patricia's] interest in [Roger's] Police and Fireman Pension to offset for the division of marital property, [Patricia] now has a 36 per cent interest in the marital portion of [Roger's] pension with the Police and Fireman Pension."
 {¶ 13} At this point, no QDRO was issued. Patricia was awarded a thirty-six percent interest in the marital portion of Roger's pension whenever Roger began to receive payment. Significantly, the court did not award Patricia a fixed amount as her portion of Roger's pension. Rather, the court awarded a percentage of that pension when it matures.
 {¶ 14} Thereafter, the court took no action until Roger's retirement. On August 23, 2002, the trial court adopted a magistrate's order that provided as follows:
 {¶ 15} "2. This matter is forwarded to David I. Kelley, CFP of Pension Evaluators for calculation of the percentage of distribution of the Police and Fireman's Pension from [Roger] to [Patricia] pursuant to the judgment entry-decree of divorce of July 30, 1998.
 {¶ 16} "3. [Roger] shall pay directly to [Patricia] her percentage of the distribution from all monies received from the Police and Fireman's Pension after July 9, 2001, until a qualified domestic relations order (QDRO) is prepared and placed pursuant to state statute."
 {¶ 17} At that point, no QDRO had been issued. The matter was turned over to a pension evaluator to determine the "percentage of distribution," i.e. thirty-six percent, pursuant to the divorce decree. In the meanwhile, Roger was ordered to pay Patricia her percentage directly until the QDRO is in place.
 {¶ 18} Thereafter, on November 12, 2002, a QDRO was issued by the trial court. The standard form of a QDRO provides for two methods of payment, (1) by fixed dollar amount or (2) by percentage. R.C. 3105.82; R.C. 3105.90. The QDRO issued by the court provided that Patricia receive thirty-six percent of the marital portion of Roger's monthly benefit, i.e., the "coverture." The amended QDRO from which Roger appeals was issued by the court on December 9, 2002, one month later. As noted above, it is identical to the November 12, 2002, in all material respects.
 {¶ 19} Contrary to Roger's argument, the trial court never fixed the value of Patricia's monthly portion of Roger's pension at $427.68. In the divorce decree, in the magistrate's order, and in the two QDROs issued, the court has consistently described Patricia's interest as thirty-six percent of the marital portion of the pension. The figure alleged by Roger to be Patricia's monthly benefit, $427.58, represents thirty-six percent of what the court found to be the present monthly value of Roger's pension at the time the divorce decree was issued. There is no evidence that the court adopted this figure as her portion of the pension.
 {¶ 20} There is nothing in the record, then, that supports Roger's claim that the trial court allowed the pension to be re-evaluated or that the trial court itself has modified its original division of the pension. If the filing of the QDRO has resulted in Patricia "receiving significantly more than what the Court originally ordered," the reason is that the monthly value of Roger's pension is significantly more now than it was at the time of the divorce decree.[4] Contrary to Roger's arguments, this increase does not represent a "future award" of non-marital assets earned subsequent to the termination of the marriage.
 {¶ 21} A review of the QDRO issued by the trial court demonstrates that calculation of Patricia's thirty-six percent interest only encompasses that part of Roger's pension that was earned during the course of their marriage. In Hoyt, the Supreme Court stated that the marital portion of a pension asset should be "calculated by the ratio of the number of years of [the] employed spouse's employment during the marriage to the total number of years of his or her employment."53 Ohio St.3d at 183. Consistent with the Hoyt formula, the QDRO at issue provides that Patricia is entitled to thirty-six percent of a fraction of Roger's monthly benefit. The numerator of this fraction is 26.75 years, which is the number of years during which Roger was married to Patricia and was a participant in the pension plan. The denominator, to be determined at Roger's retirement, will be the total number of years that Roger was a participant in the pension plan. Accordingly, we find that the QDRO at issue only divides that portion of Roger's monthly benefit that was earned during the course of his marriage with Patricia and that this portion properly includes the passive growth of the marital percentage until Roger's pension finally matured and he began to receive payments.
 {¶ 22} The Supreme Court in Hoyt expressly stated that "the trial court should attempt to ascertain the optimum value the pension or retirement benefits has to the parties as a couple."53 Ohio St.3d at 183. Consistent with this purpose, courts may adopt, through a QDRO, a deferred distribution of the marital portion of a pension that has not matured. The reason for doing so is that the marital portion of a pension may continue to increase in value after the termination of the marriage and before the maturation of the pension, typically occurring when the party earning the pension retires and begins to receive benefits.
 {¶ 23} The Second District Court of Appeals has clearly set forth the rationale behind the deferred distribution of pension benefits as follows: "[A] retirement plan is an investment made by both spouses during marriage to provide for their later years. They anticipate that the value of the investment will increase with time. At divorce, each spouse is entitled to the value of his or her investment. When the investment has not yet matured, each is entitled to a right to its value at maturity in proportion to the years of marriage. The nonemployed former spouse is not entitled to share in the direct contributions made by the participant former spouse after divorce. However, the nonemployed former spouse is entitled to the benefit of any increase in the value of his or her unmatured proportionate share after divorce attributable to the continued participation of the other spouse in the retirement plan. That increase was contemplated when the investment was made. It would be inequitable to deprive the owner of its value. So long as each former spouse is limited to his or her proportionate right to share, there is neither unjust enrichment of the nonparticipant nor an inequitable deprivation of his or her rights." Layne, 83 Ohio App.3d at 567.
 {¶ 24} A QDRO has been described as "merely an order in aid of execution on the property division ordered in the divorce decree."McKinney v. McKinney (2001), 142 Ohio App.3d 604, 608.[5] Accordingly, it is not necessary for a court to expressly reserve jurisdiction in the division of property order to issue a QDRO to effect the provisions of a property settlement. In this case, the QDRO was not issued until after Roger's retirement, four years after the original divorce decree. Although we find no fault with the trial court's procedure in this regard, we note that there is no reason why the QDRO could not have been issued at the time of the original decree. While the ultimate value of Roger's pension could not be ascertained until his retirement, that information was not necessary to the issuance of the QDRO.
 {¶ 25} We find that the QDRO issued by the trial court on November 12, 2002, and amended on December 9, 2002, faithfully executes the court's order for the division of Roger's Police and Fireman Pension as stated in the original division of property. Ferris v. Ferris (Feb. 20, 2001), 5th Dist. No. 00 CA 58, 2001 Ohio App. LEXIS 691, at *8-*9 (rejecting the argument that a QDRO constituted a modification of the parties' original separation agreement and finding that the actual value of the former spouse's interest in the marital portion of the pension plan could only be determined through a QDRO applying the former spouse's percentage interest to the pension benefits when those benefits are available for distribution). Roger's first assignment of error is overruled.
 {¶ 26} Under Roger's second assignment of error, he argues that by allowing his pension to be re-evaluated and an amended QDRO to be filed, the trial court violated its own division of property order fixing the monthly value of Roger's pension at $1,188. We disagree.
 {¶ 27} In its Findings of Fact of the divorce decree, the trial court provided the present value of Roger's Police and Fireman Pension and the present monthly value of that pension. The trial court also provided the same information for four other pension or retirement plans held by Roger and Patricia. The fact that the trial court noted these values in its Findings of Fact does not mean that the court was fixing these values as the basis for dividing these assets.
 {¶ 28} In the case of the Police and Fireman Pension, the court clearly stated in its Conclusions of Law and Judgment Entry that the parties "agree that a QDRO will be issued on said pension if ever possible" and that Patricia holds a thirty-six percent interest in the marital portion of that pension. The court further ordered that the following provision be included in the QDRO: "If the plan does not permit an immediate distribution of funds, each payee's share shall be maintained in a separate account and such account shall be credited with all interest and investment income and/or losses attributable to his or her share of the account balance after division of the account until the date of total distribution." These provisions clearly demonstrate that the trial court did not intend to assign a fixed dollar value to the marital portion of Roger's pension, but rather assigned Patricia a percentage interest in that pension until a definite value could be determined.
 {¶ 29} Moreover, it was necessary, as a practical matter, to assign a present value to Roger's Police and Fireman Pension in order to determine what percentage of Patricia's interest in that pension would offset Roger's interest in the marital residence, which the court was awarding to Patricia. Ferris, 2001 Ohio App. LEXIS 691, at *8 (although the actual value of the marital portion of the pension could not be determined until the pension matured, "the parties set forth the present value of the pension [in the separation agreement] because property generally must be assigned a value"). Roger's second assignment of error is without merit.
 {¶ 30} The decision of the Domestic Relations Division of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] The magistrate's order indicates that Roger retired on July 9, 2001, although the appellant's brief gives a date of July 21, 2001.
[2] Roger claims that at this time he began paying Patricia $427.69 per month according to the order of the court. This sum represents thirty-six percent of the present monthly value of Roger's pension as determined by the trial court in its July 30, 1998, judgment entry. Although Patricia does not contest the amount paid by Roger, we note that the actual amount paid to Patricia is not attested in the record. Accordingly, we are unable to credit Roger's claims as to the amount paid.
[3] R.C. 3105.82 requires a QDRO to include "the names, social security numbers, and current addresses of the participant and alternate payee." The November 12, 2002 order did not include this information for Patricia.
[4] We note again that there is no evidence in the record of the amount of his pension that Roger is actually paying to Patricia, either before or after the filing of the QDRO. Moreover, apart from the figures given in the property division, there is no evidence in the record as to the current value of Roger's pension.
[5] Federal law provides that a QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [retirement] plan." Employee Retirement Income Security Act of 1974, Section 206(d)(3)(B)(i)(I).