JOURNAL ENTRY and OPINION
{¶ 1} Appellant Michael Dudich appeals the Cuyahoga County Court of Common Pleas, Domestic Relations Division's judgment of divorce and division of marital property. Dudich assigns the following errors for our review:
 {¶ 2} "I. The trial court committed error by ruling permanent improvement made to appellees real estate were `repairs' and not gifts subject to reimbursement to appellant."
 {¶ 3} "II. The trial court error [sic] in adjudging appellant's separate property to be marital property."
 {¶ 4} "III. The value the trial court placed on household goods retained by appellant was against the weight of the evidence."
 {¶ 5} "IV. The trial court erred by failing to properly credit appellant for separate property awarded to appellee."
 {¶ 6} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 7} Michael Dudich and Jan Dudich were married on July 23, 1999. It was the third marriage for both parties. No children were born as issue to the marriage, but both parties have adult children from previous marriages. On December 23, 2002, Michael Dudich filed for divorce, citing incompatibility. At the time of the divorce, Michael Dudich was 52 years old and Jan Dudich was 48 years old. The matter was tried before a magistrate on July 15, 2003.
 {¶ 8} The record reveals prior to the marriage, on July 1, 1999, the parties executed an antenuptial agreement. The agreement set forth that the parties brought separate property to the marriage that would remain in their separate estates in the event of death or termination of the marriage.
 {¶ 9} The agreement listed Michael Dudich's vehicles, which included a motorcycle and a pickup truck, a $20,000 annuity, and his separate interest in a pension plan. It listed Jan Dudich's property as a house located at 9001 Murray Road, Valley View, Ohio and a leased motor vehicle.
 {¶ 10} The agreement also provided in the event of divorce, dissolution, or separation, Michael Dudich would receive $5,000 plus 6% simple interest from Jan Dudich for each year of the marriage. This represented sums Michael Dudich contributed to Jan Dudich's real property.
 {¶ 11} Further, the agreement provided in the event of divorce, dissolution or separation, each party would return to the other any gifts they had given to each other during the marriage.
 {¶ 12} During the marriage, Jan Dudich's house served as the marital home and her adult son resided with them. Michael Dudich expended $21,143 to pay off the second mortgage on the house and an additional $9,300 for a new driveway, a new garage floor, a new sidewalk and a new parking pad. Additionally, Michael Dudich spent $3,597.94 to remodel the bathroom and the kitchen.
 {¶ 13} The record further reveals that three vehicles were purchased during the marriage, namely: a 2001 Harley Davidson motorcycle, a 1999 Cadillac, and a 1995 Dodge Dakota pickup truck. Additionally, during the marriage, Michael Dudich received a 1989 Cadillac from his father, and Jan Dudich received $10,000 from her parents.
 {¶ 14} The magistrate found the antenuptial agreement to be valid and enforceable. Consequently, Jan Dudich retained ownership of the marital residence and was ordered to return $21,143 to Michael Dudich, pursuant to the antenuptial agreement that required the parties to return gifts upon termination of the marriage. This sum represented funds Michael expended to pay off a second mortgage on the marital residence shortly after the parties were married. However, the magistrate specifically overruled Michael Dudich's argument that the monies he spent on improvements to the marital residence were gifts.
 {¶ 15} The magistrate found all other assets to be marital property, and for purposes of dividing said property used the period from July 23, 1999, the date of the marriage, to July 15, 2003, the date of the final hearing.
 {¶ 16} The magistrate awarded Michael Dudich all the vehicles in his possession. These had a fair market value of $27,427. Additionally, he received the Met Life and Putnam Annuity which had a fair market value of $11,700. Finally, he received all household goods he removed from the marital residence. These items had a fair market value of $3,000.
 {¶ 17} The magistrate awarded Jan Dudich the vehicle in her possession. It had a fair market value of $3,000. Additionally, she received one-half the marital value of Michael Dudich's pension, which was currently in a payout phase. This amounted to $90 per month. Finally, she received a credit for half the value of the marital property awarded to Michael Dudich against the aforementioned $21,143 ordered returned to Michael Dudich. After said credit, Jan would be required to pay Michael Dudich the sum of $7,720. He would receive this sum by retaining Jan Dudich's share of his monthly pension for a period of 7.2 years.
 {¶ 18} Michael Dudich objected to the magistrate's decision. However, the trial court overruled the objection, adopted the magistrate's decision and granted the divorce. Michael Dudich now appeals.
 {¶ 19} In the first assigned error, Michael Dudich argues the trial court erred when it determined the permanent improvement made to Jan Dudich's real estate were repairs and not gifts subject to reimbursement. We disagree.
 {¶ 20} While a reviewing court in any domestic relations appeal must be vigilant in ensuring that a lower court's determination is fair, equitable, and in accordance with the law, an appellate court must refrain from the temptation of substituting its judgment for that of the trier of fact, unless the lower court's decision amounts to an abuse of discretion.[1] For an abuse of discretion to exist, the court's attitude must be unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment.[2]
 {¶ 21} In a divorce action the trial court must determine which property is marital and which property is separate.[3] Marital property generally includes income and appreciation on separate property due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.[4] Upon making its determination, the court shall divide the marital property equitably between the spouses and disburse a spouse's separate property to that spouse.[5]
 {¶ 22} The resolution of this assigned error is primarily controlled by the antenuptial agreement which the trial court held to be valid. It is well settled in Ohio that public policy allows the enforcement of antenuptial agreements.[6] Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching, (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property, and (3) if the terms do not promote or encourage divorce or profiteering by divorce.[7] These conditions precedent to the enforcement of a prenuptial agreement arise in part from the fact that parties who have agreed to marry stand in a fiduciary relationship to each other.[8]
 {¶ 23} Paragraph 5 of the antenuptial agreement provided in pertinent part as follows:
"In the event that the parties' marriage is dissolved by means ofdecree or judgment entry entered by a court of competent jurisdiction, orin the event that the parties enter into a formal separation agreement,then the following shall apply: (1) each party shall retain free andclear of any claim by the other, any and all assets, including realproperty and contents therein, owned by him/her on the date of theparties' marriage."
 {¶ 24} It is undisputed Jan Dudich owned the real estate, which served as the marital residence. She owned it on the date of the marriage, and as of the date of the divorce, she remained the owner. The antenuptial agreement is therefore directive as to said real estate. Any claims by Michael Dudich for the aforementioned sums expended for various repairs and improvements are barred by the plain meaning of the document.
 {¶ 25} Though Michael Dudich relies on Dixon v. Smith[9] to support his argument that the aforementioned expenditures were gifts, thus subject to reimbursement, we find the instant case to be distinguishable. In Dixon, the parties were engaged and the fiancee took out a first mortgage on her property and made improvements on the boyfriend's property. They broke up and the fiancee moved out. The trial court awarded the fiancee the amount of the mortgage, which was the amount by which the boyfriend had been unjustly enriched. Upon appeal, the court stated that (1) Ohio's Heart Balm Statute, Ohio Rev. Code Ann. § 2305.29, did not bar the fiancee's recovery of property transferred upon a promise of marriage; (2) the fiancee's claim for restitution of the conditional gift was permitted because it was not a palimony claim; (3) there was ample evidence to support the finding of unjust enrichment; (4) the trial court did not err when it refused to grant prejudgment interest because the amount due and owing on the unjust enrichment claim was not identifiable prior to trial.
 {¶ 26} Here, Michael Dudich has put forth no evidence to show that the aforementioned expenditures increased the value of the marital residence. Thus, the trial court did not err by refusing to reimburse him for the money he spent on the home during the marriage. Accordingly, we overrule Michael Dudich's first assigned error.
 {¶ 27} In the second assigned error, Michael Dudich argues the trial court erred in finding that the vehicles in his possession were marital property. We disagree.
 {¶ 28} Marital property includes all real and personal property that currently is owned by either or both of the spouses and acquired by either or both of the spouses during the marriage.[10] Separate property is any real or personal property acquired by one spouse prior to marriage.[11] A trial court assumes that any property acquired during marriage is marital, unless evidence is offered to rebut that presumption.[12] A spouse's premarital property remains separate property as long as it is traceable, regardless of whether it has been commingled with other property.[13]
 {¶ 29} As a general rule, property that is specifically and directly traceable to property outside the marriage, constitutes separate property.[14] During the course of the marriage, however, separate property may be converted to marital property through the process of transmutation.[15] In determining if transmutation has occurred, the trial court must consider the following relevant factors:
"* * * (1) The expressed intent of the parties insofar as it can bereliably ascertained; (2) the source of the funds, if any, used toacquire the property; (3) the circumstances surrounding the acquisitionof the property; (4) the dates of the marriage, the acquisition of theproperty, the claimed transmutation, and the breakup of the marriage; (5)the inducement for and/or purpose of the transaction which gave rise tothe claimed transmutation; and (6) the value of the property and itssignificance to the parties."[16]
 {¶ 30} Once a trial court has classified the property as either marital or separate, review of that determination is limited to the standard of manifest weight of the evidence.[17] This standard of review is highly deferential and even some evidence is sufficient to sustain the judgment and prevent a reversal.[18] A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.[19]
 {¶ 31} In the case sub judice, three vehicles were purchased during the marriage. However, Michael Dudich contends these should be treated as separate property because they were acquired by trading in the two vehicles he owned prior to the marriage. We are not persuaded. Marital property is generally presumed to include all property acquired during the marriage. Therefore, in every case, the party who seeks to have property declared nonmarital has the burden of proof to rebut this presumption.[20]
 {¶ 32} Michael Dudich parlayed two vehicles owned prior to marriage into three cars during the marriage. He acquired the 1999 Cadillac by trading a Dodge Dakota pickup truck, making a $3,000 down payment and financing the balance. He testified he acquired the Harley Davidson motorcycle by making an even trade of his prior motorcycle. We note the motorcycle purchased during the marriage was two years newer than the one he owned prior to marriage, therefore we assume some additional funds were expended to effect this purchase. There was no testimony as to how the third vehicle was acquired.
 {¶ 33} On the above record, the separate assets brought to the marriage have clearly been commingled to acquire other assets and therefore, were correctly deemed marital property. Transmutation occurred. Accordingly, we overrule Michael Dudich's second assigned error.
 {¶ 34} In the third assigned error, Michael Dudich argues the value the trial court placed on the household goods he retained was against the manifest weight of the evidence. We disagree.
 {¶ 35} The record reveals Michael Dudich listed in his pretrial statement that the value of household goods in his possession was $5,000. The trial court awarded him $3,000 for the value of the household goods in his possession.
 {¶ 36} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence.[21] Testimony adduced at trial indicates that Michael Dudich removed several items from the marital residence including a flagpole, a recliner, a computer, a grill and a humidifier. These facts constitute competent, credible evidence supporting the value the trial court placed on these items. Accordingly, Michael Dudich's third assigned error is overruled.
 {¶ 37} In the fourth assigned error, Michael Dudich argues the trial court erred by failing to properly credit him for separate property. We disagree.
 {¶ 38} It is undisputed that during the marriage Michael Dudich's father gifted him a 1989 Cadillac. The fair market value at the time of the divorce was $3,000. The trial court awarded a $1,500 credit to each party.
 {¶ 39} Any gift made after the date of marriage that is proven by clear and convincing evidence to have been given to only one spouse is that person's separate property.[22] However, as previously discussed in the second assigned error, separate property can become marital property by transmutation. In the instant case, the record reveals the subject vehicle was driven exclusively by Jan Dudich, and joint funds were used to maintain it. This is a clear manifestation of the intent to make said vehicle marital property.
The trial court rightly considered this vehicle marital property, despite it being gifted to Michael Dudich by his father. Accordingly, we overrule Michael Dudich's fourth assigned error.
Judgment affirmed.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SWEENEY, J., CONCUR.
 COONEY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION
[1] Martin v. Martin (1985), 18 Ohio St.3d 292.
[2] Kunkle v. Kunkle (1990), 51 Ohio St.3d 64.
[3] R.C. 3105.171(B).
[4] R.C. 3105.171(A)(3)(a)(iii).
[5] R.C. 3105.171(C),(D).
[6] Gross v. Gross (1984), 11 Ohio St.3d 99, paragraph one of the syllabus.
[7] Id. at paragraph two of the syllabus.
[8] Id., at 108; Juhasz v. Juhasz (1938), 134 Ohio St. 257, paragraph one of the syllabus.
[9] (1997) 119 Ohio App.3d 308.
[10] R.C. 3105.171(A)(3)(a)(I).
[11] R.C. 3105.171(A)(6)(a)(ii).
[12] Barkley v. Barkley (1997), 119 Ohio App.3d 155.
[13] Id.
[14] Buckles v. Buckles (1988), 46 Ohio App.3d 102, 111.
[15] Dunlap v. Dunlap (March 27, 1996), 1st Dist. Nos. C-940033, C-940050.
[16] Dunlap, supra.
[17] Marcum v. Marcum (1996), 116 Ohio App.3d 606.
[18] Barkley, supra.
[19] In Re Jane Doe I (1991), 57 Ohio St.3d 135. See, also, SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
[20] See, Breitenstine v. Breitenstine (Dec. 12, 1990), 9th Dist. No. 5495, at 4; See also, Baldwin's Ohio Domestic Relations Law, 1 Volume (Cleveland Banks-Baldwin), Text 27.03(B)(1),(1987).
[21] Wurzelbacher v. Wurzelbacher (Nov. 21, 1994), 12th Dist. No. CA94-04-100.
[22] R.C. 3105.171(A)(6)(a)(vii).