JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Gary K. Pruitt ("Husband"), appeals the judgment of the Common Pleas Court, Domestic Relations Division, that granted him and plaintiff-appellee, Maureen C. Pruitt ("Wife"), mutual divorces, adopted an agreed shared parenting plan, divided the couple's marital property, and ordered that he pay child support and spousal support.
 {¶ 2} The record reveals that the Pruitts were married on June 17, 1978, and have three children, ages 11 through 17. Husband is a certified public account ("CPA") with an annual salary of $177,109.33. Wife also is a CPA but has not worked outside the home since 1987. She was recently certified to teach Spanish and has been unsuccessfully seeking employment in that field, in which her earnings would be approximately $23,700 per year. She is enrolled in a Master's Degree program in Spanish and earns $2,100 per semester from her teaching assistantship, which she spends on books, supplies, and transportation.
 {¶ 3} The trial court ordered that Husband pay Wife $810.82 per month per child for the support of the children, totaling $2,432.46 per month for the three minor children. Additionally, he was ordered to pay for the children's medical insurance; Husband and Wife were to split any uninsured expenses 65.35%/35.65% respectively. The court ordered Husband to pay $5,100 per month for spousal support for a period of eight years, with a retention of jurisdiction, and ordered him to pay $50,000 of Wife's attorneys fees as additional support. He was further ordered to maintain a $1,020,000 life insurance policy with Wife designated as beneficiary until his support obligations ended.
 {¶ 4} On March 9, 2004, the trial court entered a Qualified Domestic Relations Order ("QDRO") regarding an Ernst Young Defined Benefit Retirement Plan in which Husband is a participant. Husband appealed the judgment of divorce on March 12, 2004. The trial court amended the QDRO on October 12, 2004. Husband appealed from that order on November 12, 2004, and the appeals were consolidated.
 {¶ 5} In his ten assignments of error, Husband challenges virtually every decision the trial court made.
 SOCIAL SECURITY BENEFITS {¶ 6} In his first assignment of error, Husband argues that the trial court erred by including the parties' potential Social Security benefits among their marital assets. First, he argues that the valuation of benefits by Wife's expert was erroneous because it was based on improper assumptions and contends that his expert properly determined the present value of the parties' Social Security because that opinion "was based upon methodology consistent with Ohio law and reasonable assumptions." The weight of the evidence and the credibility of witnesses, however, are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 7} Second, Husband argues that the trial court erred by "dividing," rather than "considering," Social Security benefits when dividing the marital property. Federal law prohibits any transfer or assignment of Social Security benefits, and, in general, protects them from execution, levy, attachment, garnishment, or other legal process. 42 U.S.C. § 407(a). Therefore, the Ohio Supreme Court has held that Social Security benefits themselves are not subject to division in a divorce proceeding. Nevillev. Neville (2003), 99 Ohio St.3d 275. Nevertheless, "a trial court, in seeking to make an equitable distribution of marital property, mayconsider the parties' future Social Security benefits in relation to all marital assets." Id. at 276-277 (emphasis added). In other words, "although a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court * * * as a relevant and equitable factor in making an equitable distribution." Id. at 278.
 {¶ 8} Here, the trial court included a valuation for each party's anticipated Social Security benefits in its description of the parties' assets. It then included each party's Social Security benefits in its listing of their portion of the property division. We do not perceive this to be a "dividing" of the party's Social Security benefits. Rather, the effect of the trial court's consideration of the valuation of each party's anticipated benefits was to offset the Wife's lower Social Security benefits against other property of marriage. This falls within the guidelines of Neville.
 {¶ 9} Appellant's first assignment of error is overruled.
 SPOUSAL AND CHILD SUPPORT {¶ 10} In his second assignment of error, Husband challenges the trial court's order that he pay $5,100 per month in spousal support for eight years and $2,432.46 per month in child support (both figures include a 2% processing fee).
 {¶ 11} The trial court enjoys broad discretion in awarding spousal support to either party when it is appropriate and reasonable to do so.Glass v. Glass (Dec. 22, 2000), Lake App. No. 99-L-120. Such an award will not be disturbed on appeal absent an abuse of discretion. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} Spousal support is allocated according to the factors found in R.C. 3105.18(C)(1):
 {¶ 13} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 14} "(b) The relative earning abilities of the parties;
 {¶ 15} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 16} "(d) The retirement benefits of the parties;
 {¶ 17} "(e) The duration of the marriage;
 {¶ 18} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 19} "(g) The standard of living of the parties established during the marriage;
 {¶ 20} "(h) The relative extent of education of the parties;
 {¶ 21} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 22} "* * *
 {¶ 23} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 24} "(l) the tax consequences, for each party, of an award of spousal support;
 {¶ 25} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 26} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 27} The record reflects that the trial court considered these factors in making its award of spousal support. It noted that this was a marriage of 25 years duration and Wife had not worked outside the home since the couple's first child was born in 1987, but was, at time of trial, pursuing a Master's Degree to teach Spanish. The trial court further found that Wife's monthly living expenses were $7,065, while Husband's were $5,071. Husband had an income of $177,000; Wife's earning potential as a teacher was $23,700, although her actual income was $4,200.
 {¶ 28} Husband complains, however, that Wife is voluntarily underemployed and, therefore, the trial court failed to impute income to Wife consistent with her earning ability in her former field of accounting or, at the very least, as an entry-level school teacher. We disagree.
 {¶ 29} If the court determines that a parent is voluntarily unemployed or underemployed, it may impute to that parent income which it determines the parent would have earned if fully employed. R.C. 3113.215(A)(5). Whether a parent is voluntarily underemployed and the amount of potential income to be imputed are matters to be determined by the trial court in light of the facts and circumstances of each case. Rock v. Cabral
(1993), 67 Ohio St.3d 108, at the syllabus. The determination will not be reversed on appeal absent an abuse of discretion. Id.
 {¶ 30} The evidence presented at trial demonstrated that Wife had made appropriate efforts to find teaching employment, but was unable to do so, and was enrolled in a Master's Degree program to improve her job opportunities. The evidence further indicated that Wife had previously worked as an accountant only because she could not find a teaching job, had not worked in that field since 1987 when the couple's first child was born, would have to take 80 hours of schooling to reactivate her CPA license, and would be able to obtain only an entry-level accounting position even if she updated her credentials. In light of this evidence, the trial court did not abuse its discretion in finding that Wife was not voluntarily underemployed.
 {¶ 31} Moreover, we note that the trial court retained jurisdiction to modify both the child and spousal support orders upon a substantial change in circumstances. Thus, if Wife eventually obtains employment at a significantly higher rate of pay, Husband may petition the court to modify spousal support. Accordingly, the trial court did not abuse its discretion in ordering Husband to pay Wife $5,100 per month in spousal support.
 {¶ 32} We are also not persuaded by Husband's argument that Wife's living expenses are excessive. It is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Here, the evidence presented at trial demonstrated that Husband and Wife are living comparable lifestyles and Husband's expenses are not so different from Wife's as to permit him to complain about her cost of living. Accordingly, Husband has not demonstrated that the trial court abused its discretion in making its determinations regarding this factual issue.
 {¶ 33} Husband has also not demonstrated that the trial court's award of eight years of spousal support under these circumstances was an abuse of discretion. Eight years of support after a 25-year marriage is reasonable and appropriate in this case considering the parties' relative earning abilities, Wife's need to professionally rehabilitate, and the ages of the children and their need for care.
 {¶ 34} Finally, Husband contends that the trial court erred in ordering that he maintain a life insurance policy to secure spousal support. The judgment entry ordered Husband to maintain a life insurance policy, with Wife designated as the beneficiary "in order to assure the payment of support." Later, the order states that Husband shall maintain the life insurance policy, with Wife designated as beneficiary "until the support ordered in this matter has terminated." The order does not specify whether the support to be secured is spousal or child support.
 {¶ 35} To the extent that the order could be construed as ordering Husband to maintain a life insurance policy to secure spousal support, we agree with Husband that the order is improper. In Robiner v. Robiner
(Dec. 7, 1995), Cuyahoga App. No. 67195, this court reaffirmed its prior holding in McCoy v. McCoy (1993), 91 Ohio App.3d 570, that security in the form of life insurance is inappropriate for spousal support payments. R.C. 3105.18(B) provides that spousal support terminates upon the death of either party and, by requiring the obligor to maintain the ex-spouse as a beneficiary, the trial court is, in effect, providing the ex-spouse with a spousal support award after the death of the obligor. Id.
 {¶ 36} To the extent that the order could be construed as securing child support, however, the order is not improper. It is appropriate to secure a child support obligation by ordering that the children be named as beneficiaries of the parent's life insurance policy until they reach the age of majority. Gillespie v. Gillespie (June 30, 1994), Cuyahoga App. No. 65518.
 {¶ 37} Here, it is not clear whether the trial court ordered Husband's life insurance policy to secure child or spousal support. The order requires Wife to be named as beneficiary of the policy. If the order was intended to secure child support, it should have specified that the children be named as beneficiaries until Husband's duty of child support ends. Accordingly, the court's order regarding Husband's life insurance policy is reversed and the matter is remanded for modification or correction of the entry consistent with this opinion.
 {¶ 38} With respect to child support, R.C. 3119.21 contains guidelines, based upon the income of the parents and the number of children, for child support cases in which the combined income of the parents is between $6,000 and $150,000. The court is required to award the amount of support designated in the guidelines unless it finds that the amount in the guideline would be unjust or inappropriate and would not be in the best interest of the child or children. If the court makes this determination in a case which falls within the guidelines, it must provide its reasons for deviating from that amount. A list of reasons for deviating is found in R.C. 3119.22.
 {¶ 39} As this court pointed out in Cyr v. Cyr, Cuyahoga App. No. 84255, 2005-Ohio-504, child support guideline calculations for families where the parents' combined income exceeds $150,000 are not available in a statute. R.C. 3119.04(B), the statute for combined income above $150,000, provides:
 {¶ 40} "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 41} Husband argues that the trial court failed to make findings to support its deviating from the highest amount on the guidelines. No such findings are necessary.
 {¶ 42} This court addressed the same issue in Cyr, supra. We held that the statute requires the court to make findings only if the amount of child support awarded deviates below the maximum figure on the guidelines:
 {¶ 43} "The revised statute for combined incomes above $150,000, R.C.3119.04(B), eliminated the requirement that the court extrapolate to determine the appropriate amount of child support when the parents' incomes exceeded $150,000. Instead, the statute leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support listed for combined incomes of $150,000. In terse language, the statute further says that when the court awards less than that amount it is required to `enter in the journal the figure, determination, and findings.' R.C. 3119.04(B). Previously, that requirement applied to all awards of child support, including those where the combined income was above $150,000. Under the revised statute, the requirement applies only to awards where the combined income is less than $150,000. However, in making its determination, the court is required to "consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." Id. at ¶ 54.
 {¶ 44} Accordingly, the trial court is free to determine any amountabove the guideline maximum without providing any reasons. Therefore, contrary to Husband's argument, the trial court was not
 {¶ 45} required to give its reasons for deviating above the guidelines.
 {¶ 46} Husband also argues that the trial court erred in assigning the full amount of child support to him. We agree.
 {¶ 47} The worksheet attached to the trial court's judgment entry indicates that the court calculated child support based upon the parties' combined incomes of $176,483.14, which included Husband's income of $113,567.14 after spousal support, or 64.35% of the total income, and Wife's income of $62,916 after spousal support, or 35.65% of the total income. The worksheet indicates that the combined child support obligation is $25,823. Although the worksheet correctly allocates $16,617.10 (64.35% of $25,823) as Husband's annual child support obligation and $9,205.90 (35.65% of $25,823) as Wife's, the judgment entry orders that Husband pay $2,432.36 per month in child support, for an annual total of $29,189.52 (including the 2% processing charge). Thus, the judgment entry incorrectly orders Husband to pay 100% of the child support obligation. Accordingly, the court's order of child support is reversed and the case remanded for correction of child support obligations consistent with the figures calculated on the worksheet.
 {¶ 48} Finally, Husband argues that the judgment entry orders him to pay the first $100 of uninsured medical expenses, although the shared parenting plan, expressly adopted by the judgment entry, indicates that Wife would pay this amount. It is unclear whether this was an oversight by the trial court or an attempt to override the shared parenting plan. In any event, the judgment is inconsistent and should be corrected upon remand.
 {¶ 49} Appellant's second assignment of error is therefore sustained in part and overruled in part.
 QUALIFIED DOMESTIC RELATIONS ORDER — DEFINED BENEFIT PLAN {¶ 50} Husband's third assignment of error challenges the QDRO entered by the trial court to divide the parties' interests in the "Ernst 
Young Defined Benefit Plan."
 {¶ 51} Initially, we reject Wife's argument that Husband's appeal of the QDRO is untimely. The judgment entry appealed by Husband on March 12, 2004 held that "Defendant has an Ernst Young Defined Benefit Retirement Plan and that the parties have stipulated that the account not be valued and should be divided equally between Plaintiff and Defendant, whatever the value may be, by an appropriate Qualified Domestic Relations Order." Accordingly, Husband's timely appeal of the judgment entry of divorce included a timely appeal of the QDRO.
 {¶ 52} Husband argues that the trial court erred by failing to determine a present value of the Retirement Plan and segregate Wife's interest in the Plan from his at the time of the divorce. In short, Husband contends that the Amended QDRO gives Wife access to contributions he will make to the Plan after the divorce, thereby depriving him of his after-divorce separate property. Husband argues further that the QDRO improperly gives Wife a pro-rata share of any early retirement benefits or subsidies. Husband's argument is without merit.
 {¶ 53} Retirement benefits or the right to receive retirement benefits accumulated during the marriage are marital property, which the court must equitably divide and distribute between husband and wife in a divorce. R.C. 3105.171(A)(3)(a)(i). The court has broad discretion in dividing the benefit. An equal division is presumed under the statute to be an equitable division. In order to reach an equitable result, the court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, while disentangling the parties' economic partnership so as to create a conclusion and finality to their marriage. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177.
 {¶ 54} The retirement plan at issue in this case is a defined benefit plan. Under this type of plan, the actual value that will be the subject of the court's equitable distribution can be determined only by future contingencies such as the participant's age and pension service credits at retirement. Ferris v. Ferris (Feb. 20, 2001), Fairfield App. No. 00 CA 58, citing Layne v. Layne (1992), 83 Ohio App.3d 559.
 {¶ 55} In Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, the Ohio Supreme Court recognized a proper method of distribution for such a situation:
 {¶ 56} "In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment."
 {¶ 57} Thus, "when the amount to be paid can only be determined at the later point of maturity at retirement, a current order should divide and distribute only the right to receive a share of the unmatured pension benefit, reserving determination of exact amounts to the later time when they are known. This method serves both objectives of an equitable division; it disentangles the affairs of the parties while producing an optimum value for each." Layne, supra at 566. See, also, Sprankle v.Sprankle (1993), 87 Ohio App.3d 129, 134 ("Where a trial court is not going to liquidate a pension immediately but orders the benefits to be divided and paid when they are ultimately paid by the pension plan, it does not have to determine the present value of the benefits at the time of the judgment.")
 {¶ 58} That is exactly what happened here. Section 6 of the Amended QDRO gives Wife the right to receive 50% of the Marital Portion of the accrued benefit upon the benefit commencement date; Marital Portion is determined by computing the ratio of the number of years of Husband's employment during the marriage (25) to Husband's total years of employment.
 {¶ 59} We reject Husband's assertion that this division improperly deprives him of his post-divorce contributions to the Plan. "A retirement plan is an investment made by both spouses during marriage to provide for their later years. They anticipate that the value of the investment will increase with time. At divorce, each spouse is entitled to the value of his or her investment. When the investment has not yet matured, each is entitled to a right to its value at maturity in proportion to the years of marriage. The nonemployed former spouse is not entitled to share in the direct contributions made by the participant former spouse after divorce. However, the nonemployed former spouse is entitled to the benefit of any increase in the value of his or her unmatured proportionate share after divorce attributable to the continued participation of the other spouse in the retirement plan. That increase was contemplated when the investment was made. It would be inequitable to deprive the owner of its value. So long as each former spouse is limited to his or her proportionate right to share, there is neither unjust enrichment of the nonparticipant nor an inequitable deprivation of his or her rights." Layne, supra, at 567.
 {¶ 60} Appellant's third assignment of error is overruled.
 SUPPLEMENTAL RETIREMENT PLAN {¶ 61} In his fourth assignment of error, Husband argues that the trial court erred in dividing his Ernst and Young Supplemental Retirement Plan between the parties. Husband contends that because he is not yet vested in the Plan, it has no value, and hence, there is nothing to divide. We disagree.
 {¶ 62} "Whether vested or otherwise, pension and retirement benefits have value." Haller v. Haller (Mar. 18, 1996), Warren App. No. "As with all valuable assets accumulated during a marriage by either spouse, these benefits may be found to be marital property by a trial court and, if so, must be considered in the equitable division of marital assets." Id. See, also, Lemon v. Lemon (1988), 42 Ohio App.3d 142, 144. ("An unvested pension plan has a value.")
 {¶ 63} Husband also argues that the Supplemental Retirement Plan should not be divided because it is not covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). Although a non-covered plan is not subject to a QDRO, the trial court did not enter a QDRO dividing the Supplemental Plan. Accordingly, we find no error in its division.
 {¶ 64} We note, however, that in the judgment entry of divorce, the trial court ordered that the Supplemental Plan be divided as part of the property division, whereas in its judgment entry dated March 9, 2004, the trial court characterized Wife's benefit in the plan as spousal support. Accordingly, the trial court's order is reversed and remanded for correction of the payment as property division, rather than spousal support.
 {¶ 65} Appellant's fourth assignment of error is sustained in part and overruled in part.
 INHERITANCE {¶ 66} In his fifth assignment of error, Husband argues that the trial court erred in finding that his inheritance from his mother was marital, rather than separate, property.
 {¶ 67} R.C. 3105.171(A)(6)(a)(i) states:
 {¶ 68} "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 69} "An inheritance by one spouse by bequest, devise, or descent during the course of the marriage."
 {¶ 70} The statute further states that "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Id.
 {¶ 71} Thus, separate property may be converted to marital property when it is commingled with marital property. Peck v. Peck (1994),96 Ohio App.3d 731, 734. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.Cimperman v. Cimperman, Cuyahoga App. No. 80807, 2003-Ohio-869, at ¶ 9, citing Peck, supra.
 {¶ 72} Husband first contends that the trial court erred in determining that a grand piano purchased in 1997 was marital property because the evidence at trial demonstrated that he received a distribution from his mother's estate in the amount of $20,328.51, deposited the money in his separate bank account, then immediately disbursed funds from this account to the parties' joint marital account to purchase the piano. Other evidence at trial, however, indicated that funds already on deposit in the marital account were sufficient to purchase the piano and the inheritance was commingled with other monies in the fund, making it impossible to trace the inheritance to the grand piano. The trial court was free to weigh this conflicting testimony and make its decision accordingly. See Buckles v. Buckles (1988),46 Ohio App.3d 102, 110. In light of the conflicting evidence, the trial court did not err in finding that Husband had not proved by a preponderance of the evidence that the funds used to purchase the piano were sufficiently traceable so as to render the piano separate property.
 {¶ 73} Husband also claims that various annuity payments (apparently from his mother's estate) he received and deposited in his separate account were separate, rather than marital, property. Evidence at trial, however, demonstrated that these funds were likewise commingled with marital property, even in Husband's separate account. Accordingly, the trial court did not err in determining that the monies were not separate property.
 {¶ 74} Appellant's fifth assignment of error is overruled.
 LIABILITIES {¶ 75} Husband's sixth assignment of error challenges the trial court's determination that two credit card account balances were marital debts. He claims that Wife incurred these charges after the parties separated and for her personal debts, so they should have been allocated to her individually.
 {¶ 76} Marital debt is "any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." Mencini v.Mencini, Cuyahoga App. Nos. 83638 and 83820, 2004-Ohio-3125. A court is required to equitably divide and distribute the parties' marital property, including assets and liabilities. R.C. 3105.171; Kaechele v.Kaechele (1988), 35 Ohio St.3d 93.
 {¶ 77} Because both credit card debts were incurred prior to July 28, 2003, the termination of the marriage, they were incurred during the marriage. They were also incurred for the joint benefit of both parties or a valid marital purpose. Husband argues that some of the monies were used to replace a furnace in Wife's home, paint the home, and pay the mortgage on the home. Because the house was a marital asset, however, these expenses were obviously for a valid marital purpose. Moreover, Husband's contention that some of the monies were used to pay Wife's attorneys is based on speculation as these were cash loans on credit cards. The trial court did not err in holding that the credit card debts incurred prior to the termination of the marriage were marital liabilities.
 {¶ 78} Appellant's sixth assignment of error is overruled.
 U.S. BANK ACCOUNT {¶ 79} In his seventh assignment of error, Husband complains that the trial court erred in finding that a bank account that he opened after Wife moved out of the marital home was marital property. He claims that because he was already paying spousal support to Wife at this time, the account should be his separate property.
 {¶ 80} Marital property is generally presumed to include all property acquired during the marriage. Dudich v. Dudich, Cuyahoga App. No. 84742,2005-Ohio-889, at ¶ 31. Once a trial court has classified the property as either marital or separate, review of that determination is limited to the standard of manifest weight of the evidence. Marcum v. Marcum
(1996), 116 Ohio App.3d 606. This standard of review is highly deferential and only some evidence is sufficient to sustain the judgment and prevent a reversal. Dudich, supra, citing Barkley v. Barkley (1997),119 Ohio App.3d 155.
 {¶ 81} Here, the account was opened during the marriage. We find no reason to reverse the trial court's judgment that a bank account containing income accumulated during the marriage was marital property.
 {¶ 82} Appellant's seventh assignment of error is overruled.
 DATE OF TERMINATION OF MARRIAGE {¶ 83} In his eighth assignment of error, Husband argues that the trial court erred in determining that the marriage terminated on the first day of trial.
 {¶ 84} The date of the final hearing is presumed to be the appropriate date of termination of the marriage unless the court, in its discretion, finds that use of this date would be inequitable. R.C. 3105.17(A)(2);Badovick v. Badovick (1998), 128 Ohio App.3d 18, 22.
 {¶ 85} Husband argues that the date of the marriage should have been October 5, 2001, when Wife filed her complaint for divorce. He contends that no attempts to reconcile were made after June 2001, and, after she filed for divorce, Wife unilaterally began dividing marital property by withdrawing $50,000 from the parties' Discover account and eventually purchasing her own home.
 {¶ 86} Wife, on the other hand, produced evidence at trial that Husband's abusive behavior forced her to move from the marital home. Wife also produced evidence that since March 2001, Husband had denied her access to any monies, which denial forced her to retrieve a portion of joint funds for legitimate household and family expenditures.
 {¶ 87} In light of this evidence, we cannot find that the trial court abused its discretion in determining that the date of trial was the termination date of the marriage.
 {¶ 88} Appellant's eighth assignment of error is overruled.
 ATTORNEY FEES {¶ 89} In his ninth assignment of error, Husband complains that the trial court erred in awarding Wife $50,000 in spousal support to pay her attorney fees.
 {¶ 90} It is well established that a trial court's decision to award attorney fees will not be disturbed on appeal absent a clear abuse of discretion. Szymczak v. Szymczak (2000), 136 Ohio App.3d 706, 715. "A trial court's decision to award or not to award attorney fees should take into consideration the factors of R.C. 3105.18, specifically the earning abilities of the parties and the relative assets and liabilities of each." Birath v. Birath (1988), 53 Ohio App.3d 31, 39.
 {¶ 91} R.C. 3105.18(H) provides:
 {¶ 92} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 93} In addition, R.C. 3105.171(E) provides that "if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 94} Husband first contends that the trial court erred in ordering him to pay $50,000 of Wife's attorney fees because there is no evidence that, without the award, she would have been prevented from fully litigating and protecting her interests. Husband argues that Wife was able to pay some of her attorney fees prior to the award, had sufficient funds to buy a house and purchase household items, and had monies to obtain various experts to assist her in the litigation. Therefore, he contends, she had sufficient funds to adequately protect her interests in the litigation. We are not persuaded.
 {¶ 95} The evidence at trial demonstrated that Wife's income was significantly less than Husband's and that she had borrowed money to pay her attorney and household expenses. The fact that Wife was able to borrow money to pay her attorney does not mean that she would be able to pay the remaining fees without an adequate award. Moreover, Husband's argument that Wife was not prevented from protecting her interests because she retained experts to assist her is without merit. Apparently Husband would have the court award attorney's fees only if Wife's financial situation prevented her from participating in the litigation at all. That is not the standard, however.
 {¶ 96} Husband also argues that the trial court erred in awarding attorney fees to Wife as spousal support. Pursuant to R.C. 3105.171(E), attorney fees awarded to compensate a party for the financial misconduct of the other party may only be awarded as a "distributive award" or "a greater award of marital property." Here, the trial court found that "much of Plaintiff's attorney fees were made necessary by Defendant's misconduct throughout the pendency of this matter." Husband argues, therefore, that in light of this finding, the court could have awarded attorney fees as part of Wife's award of marital property, but could not order them paid as spousal support. Husband's argument is without merit.
 {¶ 97} In addition to its finding that Husband's misconduct unnecessarily increased Wife's attorney fees, the court also found that Wife would be prevented from fully litigating her interests absent an award of attorney fees, and that Husband had the financial ability to pay $50,000 of Wife's fees. Thus, the trial court's finding that Husband's misconduct had increased the attorney fees was one, but not the only, factor in its decision to award fees. In light of its findings, the trial court did not abuse its discretion in awarding attorney fees as spousal support pursuant to R.C. 3105.18(H).
 {¶ 98} Appellant's ninth assignment of error is overruled.
 HUSBAND'S 401(K) PLAN {¶ 99} A property division in a divorce decree may be enforced by contempt proceedings. Harris v. Harris (1979), 58 Ohio St.2d 303. Here, the judgment entry ordered Husband to pay Wife $133,638 within 90 days from the journalization of the entry. Husband did not do so and, accordingly, on June 14, 2004, Wife filed a motion to show cause as to why Husband should not be held in contempt. Wife's motion was by resolved by entry of an Agreed Judgment Entry on November 1, 2004, which set forth the agreement of the parties as follows:
 {¶ 100} "The Court finds that, by decree filed February 12, 2004, as corrected by entry filed February 23, 2004, defendant owes plaintiff one hundred thirty-three thousand six hundred thirty-eight dollars ($133,638.00), which was due by May 12, 2004, of which fifty-thousand dollars ($50,000) was paid on August 24, 2004; other property division, which has not been paid; and the sum of fifty thousand dollars ($50,000) for attorney fees, which has not been paid. Defendant was to facilitate the transfer of his retirement interest, which he has not transferred.
 {¶ 101} "It is therefore ordered that, of the sum of one hundred thirty-three thousand six hundred thirty-eight dollars ($133,638.00), the collection of forty-eight thousand six hundred thirty-eight dollars ($48,638.00) is hereby stayed pending appeal. The balance of eighty-five thousand dollars ($85,000.00) shall be paid as follows: fifty thousand dollars ($50,000.00) by check on August 23, 2004; thirty-five thousand dollars ($35,000.00) by transfer from the Ernst and Young 401(k) plan (defined contribution plan) forthwith, provided, however, that an additional amount shall be paid at the same time from the defined contribution plan to compensate plaintiff for her tax liability on the thirty-five thousand dollars ($35,000.00) payment. That additional amount shall be ten thousand dollars ($10,000.00).
 {¶ 102} "It is further ordered that the domestic relations order against defendant's Ernst and Young defined contribution plan shall provide that plaintiff is to receive (a) 50% of the value of the plan plus (b) fifty thousand dollars ($50,000.00) payable from defendant's half of the plan (representing plaintiff's attorney fee award) plus (c) the forty-five thousand dollars ($45,000.00) described herein above, also payable from defendant's half of the defined contribution plan." The QDRO was amended in conformity with this agreed judgment entry.
 {¶ 103} Husband now argues that the trial court erred in entering the Amended QDRO regarding his Ernst Young Defined Contribution Plan. Husband argues that the Amended QDRO regarding the Contribution Plan is inconsistent with the judgment entry of divorce because it awards Wife 50% of the account balance in the Plan as of July 7, 2003, plus $95,000 or, if less, the entire amount of the account determined as of the date a separate account is established for Wife, as opposed to an award of $107,358.50 in the judgment entry. Husband complains that the trial court did not retain jurisdiction to modify its property division and, therefore, any such modification is prohibited.
 {¶ 104} The general rule in Ohio is that a trial court does not retain
 {¶ 105} jurisdiction to alter a division of marital property once it becomes final. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, paragraph one of the syllabus; R.C. 3105.171(I) ("A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court.")
 {¶ 106} Nevertheless, "while a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment." DiFrangiav. DiFrangia, Trumbull App. No. 2003-T-0004, 2003-Ohio-6090, at ¶ 10, quoting Gordon v. Gordon (2001), 144 Ohio App.3d 21, 23. A QDRO has been described as "merely an order in aid of execution on the property division ordered in the divorce decree." McKinney v. McKinney (2001),142 Ohio App.3d 604, 608. "Accordingly, it is not necessary for a court to expressly reserve jurisdiction in the division of property order to issue a QDRO to effect the provisions of a property settlement."DiFrangia, supra, at ¶ 24.
 {¶ 107} Here, the Amended QDRO was necessary to effect the provisions of the court's prior order of divorce because Husband had not complied with the court's order of property division. This was not a redistribution of property but an order by the trial court to enforce the property and spousal support provisions of the original divorce decree. A court has jurisdiction to issue orders in aid of relief previously granted.
 {¶ 108} Moreover, in order to avoid a finding of contempt for his failure to comply with the court's order, Husband agreed to the provisions of the judgment entry modifying the QDRO. Accordingly, we find Husband's argument at this late date that the court lacked jurisdiction to enter the Amended QDRO specious.
 {¶ 109} Appellant's tenth assignment of error is overruled.
Affirmed in part, reversed in part and remanded.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellee recover from appellant costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.