[Cite as *Mann v. Mann*, 2011-Ohio-1646.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

DOUGLAS D. MANN,                            :

    Plaintiff-Appellee,                     :        Case No.   09CA38

    vs.                                     :

MARY PAT MANN nka LYNCH,                    :        DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                    :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        K. Robert Toy, 50 ½ South Court Street, Athens, Ohio
                              45701

COUNSEL FOR APPELLEE:         Thomas E. Eslocker, 16 West State Street, Athens, Ohio
                              45701

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-28-11

PER CURIAM.

{¶ 1}   This is an appeal from an Athens County Common Pleas Court judgment that

terminated the marriage between Douglas Mann, plaintiff below and appellee herein, and Mary

Pat Mann nka Lynch, defendant below and appellant herein.

{¶ 2}   Appellant raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR PREJUDICIAL
TO THE APPELLANT WHEN IT FAILED TO USE AN
ENFORCEABLE AND FINAL DECISION SEPARATING

APPELLEE'S RETIREMENT PENSION AS MARITAL PROPERTY."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT WHEN IT FOUND APPELLANT'S DISABILITY INCOME TRANSMUTES TO RETIREMENT INCOME WHICH IS AGAINST PREVAILING LAW."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT WHEN THE TRIAL COURT LIMITED SPOUSAL SUPPORT TO TEN YEARS AND DECREASING SPOUSAL SUPPORT OVER THE TERM OF THAT PERIOD."

FOURTH ASSIGNMENT OF ERROR:

"[THE] TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT WHEN IT FOUND THAT APPELLANT 'MAY BE' PERMANENTLY DISABLED AND THERE WAS POTENTIAL IMPROVEMENT IN APPELLANT'S PHYSICAL CONDITION."

FIFTH ASSIGNMENT OF ERROR:

"THE COURT ABUSED ITS DISCRETION BY IGNORING A STIPULATION OF THE PARTIES AS TO APPELLEE'S CONTRIBUTION TO APPELLANT'S LEGAL FEES."

{¶ 3} The parties married in 1984. They had two children, both now emancipated. Appellee is employed at Ohio University and contributes to the State Teachers Retirement System and the Ohio Public Employees Retirement System (OPERS). Appellant worked for Ohio University until June 1, 1996, when she could no longer work due to a diagnosis of rheumatoid arthritis. At that time, she began to receive OPERS disability pay. Appellant currently receives a $3,458.98 monthly disability allowance.

**{¶ 4}** In May 2008, appellee filed a complaint for divorce. Before trial, the parties entered into certain stipulations regarding the division of personal property. The parties primarily disputed the division of the retirement assets and appellant's entitlement to spousal support. At the final hearing both parties presented expert testimony concerning the valuation of the parties' retirement benefits. Appellant's expert, Mark Snider, testified that he evaluated both parties' retirement benefits and projected appellee's monthly pension benefit to be $3,852 if he retires at age sixty. The marital portion of this amount would be 95.35% (24 years married / 25.17 employed). His present value figure averaged out to be $548,638. Snider stated that appellant is projected to receive a monthly pension benefit of $902 at age 60, of which 98.6% is marital property. He stated that the present value of appellant's pension is $167,002, using a life expectancy of 85, and $88,074, using a life expectancy of 71.

**{¶ 5}** Appellee's expert, Heather Stoll, testified that the present value of appellant's pension is $430,996.83, and that appellee's is $378,103.46. Stoll admitted, however, that in October 2007 she found that the marital present value of appellant's pension was $152,035.70. Stoll explained that the difference in the present values was based upon the assumptions that the requesting attorneys told her to use when calculating the present value.

**{¶ 6}** Stoll's report also explained the various scenarios for dividing pension benefits and noted that the present value "may differ markedly from the 'Account Value'" as stated on the employee's annual statements. For example, as of December 31, 2006, appellee's account value was $248,810.11. However, Stoll's analysis determined that the present value was approximately $130,000 more than the stated "account value." Stoll noted that an employee could choose to cash out the account and that the cash out amount increased with the number of

years of service.   She explained that obviously, whether to use the actuarial present value or the

cash out value is a matter for the court.   Stoll's report then stated:

> "[I]f the 'account value' is greater than the actuarial present value, the non-participant may feel reluctant to accept the lower value of the actuarial present value unless the judgment entry reserves jurisdiction to divide the greater value of the pension in the event that the participant does, indeed, cash-out their interest in the plan.   An open minded look at the issue clearly demonstrates the danger to the non-participant because the participant, in such a case, could access the higher value soon after the divorce without being encumbered to share that value with a former spouse.   Similarly, if it is clear that the participant is not likely to terminate employment and the actuarial present value is less than the 'account value' there may be a well-founded reluctance to accept the higher cash-out value."

Stoll's report also offered "Reasons for the Non-Participant to Accept a Present Value":

> "Assessing a present value for a pension and then receiving a lump sum in offsetting assets or a series of periodic payments offers at least three possible advantages to the non-participant in the pension plan.   First, the parties disentangle their economic affairs bringing a finality to this component of their relationship.   Second, if the non-participant spouse elects to share the pension at a future date and the participant dies prior to benefit commencement, the non-participant may receive nothing at all from the pension.   Third, if the non-participant dies, either before or after pension commencement, nothing may accrue to their estate.
> Relatively few traditional defined benefit pension plans allow a lump sum distribution and far fewer allow survivorship benefits on the alternate payee's portion of a pension or the pre-retirement survivorship annuity.   By choosing a lump sum distribution, from the plan (if allowed) or as an offset for an asset that they control, an individual can protect their ownership portion of a pension for their designated dependents or beneficiaries.   However, once taken, there will be no future benefits due from the plan.   An individual may fare better by investing their lump sum into their own retirement account.   However, even if invested for the future, there are no guarantees of a better return or even that the original principal will be preserved."

Stoll's report further presented "Reasons for the Non-Participant to Reject a Present Value in

Favor of a Deferred Distribution":

> "Present value reports are snapshots frozen in time.   The value of a pension, as measured by a present value report, may change dramatically in a short period of time. Fluctuations in interest rates are the best known cause for these changes.   As interest rates increase, the present value of the pension drops; conversely, as interest rates

decrease, present values increase.

> Less well known is the impact of plan design on present values. High final n-year average salary based benefit formulas usually cause the benefit to increase faster in later years of employment. Even more dramatic is the effect of retirement age. Some plans allow earlier retirement at a highly subsidized, or even unreduced, level after certain age and service qualifications are met. Some plans may pay these benefits for life or as a temporary supplemental benefit to younger but long service employees. Once a participant becomes eligible to choose a younger retirement age where benefits are not actuarially adjusted, the present value of the benefit can increase substantially. Ex-spouses are considered to have a right to share in subsidized enhancements in most courts. * * * *."

{¶ 7} Regarding the spousal support issue, appellee testified that appellant "is capable of doing a number of physical and mental activities." He stated that he has "watched her improve slowly but steadily over the years since the time she went on disability, taking long walks, gardening, lifting gardening materials, using the lawn tractor, cleaning the house."

{¶ 8} Appellant also requested that appellee pay part of her attorney fees. Appellee's counsel stipulated that $5,000 is a reasonable fee for an attorney in a divorce case.

{¶ 9} In September 2009, the trial court issued a divorce decree. Concerning spousal support, the court stated: "[Appellant's medical] condition may be permanent, although in recent times there have been some developments raising the prospect of an improvement in her physical abilities." The court recognized that both parties' economic conditions would likely change in the next five to ten years. The court stated that if appellee retires, then appellant "can re-open the case and request a lump sum payment from [appellee] consistent with a present value calculation. If [appellee] takes retirement from STRS after ten years then [appellant] shall share in his monthly and/or lump sum benefits by appropriate division order (DOPO) in proportion to the number of years the marriage represents to the years he has been a member of the system. The Court is retaining jurisdiction for that period to consider or reconsider this retirement issue,

if necessary.   The Court accepts [appellee's] expert's analysis of disability income as replacement income until it transmutes into retirement income."   The court found that the parties' pension benefits constitute marital property.   The court ordered that appellant retain her pension and acquire part of appellee's to help balance and/or equalize marital assets "post divorce."   The court awarded appellant spousal support that would slowly decrease over the course of ten years and retained jurisdiction over the spousal support issue.   The court ordered appellee to pay appellant spousal support in the amount of:   (1) $600 for the first twenty-four months; (2) $500 for the next thirty-six months; and (3) $400 for the remaining five years.   The court further ordered appellee to pay $3,000 toward appellant's attorney fees.   This appeal followed.

I

{¶ 10}  In her first assignment of error, appellant argues that the trial court erred by failing to equitably divide appellee's retirement benefits.   Appellant contends that the trial court must determine the value of appellee's retirement benefits and divide them in an equitable manner, rather than deferring distribution of these marital assets and retaining jurisdiction to divide appellee's retirement benefits upon his retirement.   Appellant also asserts that the trial court abused its discretion by crediting Stoll's testimony.   She complains that the court failed to provide a rationale for its decision and that in any event, the record does not support a basis to accept Stoll's testimony over Snider's.

A

FINDINGS OF FACT AND CONCLUSIONS OF LAW

{¶ 11}  Initially, we note that appellant did not file a Civ.R. 52 request for findings of fact

and conclusions of law.   Civ.R. 52 states: "When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."   The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue.   See Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 801, 673 N.E.2d 188; Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99CA4.   When a party fails to request findings of fact and conclusions of law, we must presume the regularity of the trial court proceedings.   See, e.g., Bunten v. Bunten (1998), 126 Ohio App.3d 443, 447, 710 N.E.2d 757; see, also, Cherry v. Cherry (1981), 66 Ohio St.2d 348, 356, 421 N.E.2d 1293; Security Nat. Bank and Trust Co. v. Springfield City Sch. Dist. Bd. of Educ. (Sept. 17, 1999), Clark App. No. 98-CA-104; Donese v. Donese (April 10, 1998), Greene App. No. 97-CA-70.   In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment. See, e.g., Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶10, citing Allstate Financial Corp. v. Westfield Serv. Mgt. Co. (1989), 62 Ohio App.3d 657, 577 N.E.2d 383; see, also, Yocum v. Means, Darke App. No. 1576, 2002-Ohio-3803, at ¶7 ("The lack of findings obviously circumscribes our review.").   As the court explained in Pettet v. Pettet (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d 929:

> "[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request.   Thus, if from an examination of

the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

The message is clear:   If a party wishes to challenge the* * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law.   Otherwise his already 'uphill' burden of demonstrating error becomes an almost insurmountable 'mountain.'"

See, also, Bugg; McClead v. McClead, Washington App. No. 06CA67, 2007-Ohio-4624.

{¶ 12}  In the case at bar, the trial court did not enter detailed factual findings or legal conclusions.   However, in the absence of a Civ.R. 52 request, it was not required to do so. Because appellant did not request findings of fact and conclusions of law, we will presume the regularity of the trial court proceedings, in the absence of evidence to the contrary.

B

STANDARD OF REVIEW

{¶ 13}  A domestic relations court enjoys broad discretion in fashioning a division of marital property, and consequently, we will not reverse its decision absent an abuse of discretion. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197.   The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or capricious.   See, e.g., Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.   Furthermore, we will not disturb a trial court's factual finding unless it is against the manifest weight of the evidence.   See, e.g., C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.   A finding is not against the manifest weight of the evidence as long as the record contains some competent, credible evidence to support it.   Id.   "This standard of review is highly deferential and even 'some'

evidence is sufficient to sustain the finding and prevent a reversal." Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. "A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." Id., citing In re Jane Doe I (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; see, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273.

C

DIVISION OF RETIREMENT BENEFITS

{¶ 14} Retirement benefits acquired during a marriage are marital assets that a trial court must consider when equitably dividing the marital property between divorcing spouses. See R.C. 3105.171(A)(3)(a)(i) and (B); Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292. A trial court possesses discretion when determining how to equitably distribute retirement benefits and "must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Hoyt at paragraph one of the syllabus.

{¶ 15} A retirement asset "is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets." Id. at 180. Furthermore, when dividing retirement benefits, "[t]he trial court should attempt to preserve the * * * retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Id. at paragraph two of the syllabus.

{¶ 16} In Hoyt, as in the case sub judice, the trial court did not assign a present value to the husband's retirement asset, but instead ordered a deferred distribution of the husband's future retirement benefits. On appeal, the husband argued that the trial court erred by failing to assign a present value to his retirement asset. The Ohio Supreme Court explained the options available when a trial court considers the parties' retirement assets:

> "[The court] must obtain a result which will preserve the asset so that each party can procure the most benefit. Thus, the trial court must have evidence before it detailing the intricacies and terms of the particular plan. Then, the trial court must make an equitable determination based upon the parties' overall financial situation, whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit. There are several alternatives to a direct * * * division, such as an immediate offset of a current assignment of proportionate shares, with either a current distribution or a deferred distribution. A deferred distribution may consist of either a current assignment or a division of the asset at such time that the plan directs distribution based upon the employee's eligibility."

Id. at 181.

{¶ 17} The Hoyt court further noted that a trial court may tailor its decision regarding an equitable division of retirement benefits according to whether the benefits are matured or unmatured. When the benefits are unmatured, as they are in the case sub judice, then the trial court:

> "may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment.
> When a trial court decides that a pension or retirement asset shall be paid by deferred distribution, it has created a situation where the parties' affairs are not concluded. The non-employed spouse may be placed in a position where he or

she must monitor the fund, which may also create problems for the plan administrator. Although this alternative divides the risk between the parties that the benefits will fail to vest or mature, as an example, there is nothing to prevent an employed spouse, for whatever reason, from quitting his or her employment and becoming employed elsewhere. Likewise, the nonemployed spouse bears the risk that the employed spouse will die and the expected benefits, before being vested or matured, will terminate."

Hoyt at 182.

{¶ 18} The Hoyt court did recommend that trial courts endeavor to disentangle the parties' financial relationship. The court explained that trial courts should:

"strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership. Certainly, some circumstances may warrant joint ownership after a divorce and situations may evolve where joint decisions must be made. In these matters, trial courts must exercise their fullest discretion. But, realistically, due to the nature of divorce, the circumstances usually are not conducive to joint decisionmaking by the parties. Therefore, some effort should be made to disentangle the parties' economic affairs."

Id. at 182-183.

{¶ 19} The Hoyt court additionally suggested that trial courts "attempt to ascertain the optimum value the pension or retirement benefit has to the parties as a couple, based upon the nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." Id. at 183.

{¶ 20} Ultimately, the Hoyt court determined that using the present value of $439.74 on the date of journalization of the divorce decree would be "unfair and inequitable" and would not "comport with the notion that this asset, the most significant marital asset of these parties, be divided to ensure each party the most benefit." Id. at 183-184. The court thus remanded the matter to the trial court to redistribute the husband's retirement benefits according to its guidelines. Accordingly, under Hoyt:

> "[A] trial court may divide a pension fund using the 'present value method' or the 'deferred distribution method.' [Id. At 181]. Under the 'present value method,' the court first determines the amount the non-employee spouse is to receive. Secondly, the court: (1) orders that amount withdrawn from the pension fund; or (2) offsets that amount with installment payments or other marital property. Baldwin's Ohio Domestic Relations Law (1990), 274, Section 25.05(E)(3). Under the 'deferred distribution method,' the trial court orders that a percentage of the future benefits be paid from the pension fund to the non-employee spouse if and when the pension matures."

Newell v. White, Pickaway App. No. 05CA27, 2006-Ohio-637, at ¶7.

{¶ 21} In the case sub judice we believe that Hoyt validates the trial court's approach. Here, the trial court, in essence, ordered a deferred distribution. The court stated that if appellee retires within the next ten years, then appellant can re-open the case and request a lump sum payment from appellee consistent with a present value calculation. The court specified that if appellee[1] retires after ten years, then appellant "shall share in his monthly and/or lump sum benefits by appropriate division order (DOPO) in proportion to the number of years the marriage represents to the years he has been a member of the system." The court further retained jurisdiction over the division of retirement benefits and ordered appellant's attorney to prepare a DOPO that anticipates appellee's retirement after ten years and specifies the coverture formula. After our review of the record, we do not believe that the trial court abused its discretion by deferring distribution of appellee's retirement benefits. The trial court heard extensive

---

[1] The trial court's judgment states that "If Defendant takes retirement from STRS after ten years then Defendant shall share in his monthly and/or lump sum benefits by appropriate division order (DOPO) in proportion to the number of years the marriage represents to the years he has been a member of the system." We believe that the trial court's first use of "Defendant" in the preceding sentence is a clerical error and that the court meant to use "Plaintiff," which would be appellee. Moreover, neither party has disputed that this is the meaning of the trial court's decision.

testimony from both appellant's and appellee's experts regarding the present value of appellee's retirement benefits. The trial court also had evidence before it regarding appellee's expected monthly retirement income. A trial court is entitled to exercise its discretion to determine that a deferred distribution may better preserve a retirement asset. Even though the court deferred the distribution of appellee's retirement benefits in the case at bar, and may not have disentangled the parties' financial affairs, its failure to do so does not constitute an abuse of discretion. See Haynes v. Haynes (Mar. 4, 1998), Summit App. No. 18487 (stating that "disentangling the parties' affairs as quickly as possible is a favorable result, but facilitating financial disassociation is not the only factor to consider"). Moreover, "there is no requirement that the court must, as a matter of law, divide marital pension benefits. It must simply consider the pension plan as a marital asset in reaching an equitable division of marital property." Soulsby v. Soulsby, Meigs App. No. 07CA1, 2008-Ohio-1019, at ¶13.

{¶ 22} Other Ohio courts have endorsed the trial court's approach used in this case, noting that with a defined benefit plan, such as appellee's, the actual value subject to equitable distribution "can be determined only by future contingencies such as the participant's age and pension service credits at retirement." Pruitt v. Pruitt, Cuyahoga App. No. 84335, 2005-Ohio-4424, at ¶53. Courts have thus concluded that "[w]hen the amount to be paid can only be determined at a later point of maturity at retirement, a current order should divide and distribute only the right to receive a share of the unmatured pension benefit, reserving determination of exact amounts to the later time when they are known. This method serves both objectives of an equitable division; it disentangles the affairs of the parties while producing an optimum value for each." Layne v. Layne (1992), 83 Ohio App.3d 559, 566, 615 N.E.2d 332;

see, also, Pruitt at ¶56; Reynolds v. Reynolds (July 21, 1999), Wayne App. No. 98CA40 (stating

that "courts have the option of retaining jurisdiction to order the distribution of benefits upon

either their maturity, or upon the employee's application for withdrawal of those funds");

Sprankle v. Sprankle (1993), 87 Ohio App.3d 129, 134, 621 N.E.2d 1310 (When a trial court is

not going to immediately liquidate a pension, but instead orders the benefits to be divided and

paid when they are ultimately paid by the pension plan, it need not determine the present value of

the benefits at the time of the judgment.).

{¶ 23} Furthermore, in the case sub judice the trial court had before it Stoll's report that

detailed the various options for dividing a pension.   Her report offered various scenarios and

rationales to support each option.   The trial court rationally could have concluded, based upon

Stoll's report, that a deferred distribution will better preserve the retirement asset and may even

benefit appellant into the future, although not as immediately as an outright division.

Consequently, we are unable to conclude in the case sub judice that the trial court abused its

discretion when it fashioned the division of appellee's retirement assets.

{¶ 24} We turn now to appellant's claim that the trial court's decision to credit Stoll's

testimony is against the manifest weight of the evidence.   First, as we noted earlier, appellant

failed to request findings of fact and conclusions of law.   As such, she has waived the right to

challenge the trial court's factual findings, or lack thereof, and more specifically, her complaint

that the trial court failed to offer a rationale for crediting Stoll's testimony.   In any event, we also

observe that the trial court did not explicitly credit Stoll's testimony in its entirety.   Rather, the

court simply stated that it accepted Stoll's "analysis of disability income as replacement income

until it transmutes into retirement income."   Appellant's argument appears to be directed at

Stoll's testimony regarding present value.   The trial court, however, did not make any credibility determination regarding the experts' present value testimonies.   Indeed, apparently because of the widely conflicting present value figures, the court declined to assign a present value to the assets, but instead left it for future determination upon future distribution.   We find the trial court's explicit credibility determination regarding disability income as replacement income to be largely irrelevant to the issue regarding the present value of appellee's retirement assets.   Thus, we find appellant's credibility argument misplaced.   Moreover, we note that credibility determinations rest primarily with the trial court.   A trial court's function, as the trier of fact, is to resolve disputes of fact and weigh the credibility of the testimony and documentary evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.   We must defer to a trial court's credibility determinations because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."   Seasons Coal Co.

{¶ 25} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

## II

{¶ 26} In her second assignment of error, appellant challenges the trial court's conclusion that her disability income transmutes into retirement income, and thus marital property, upon her attaining retirement age.   Appellant essentially argues that the disability income she receives is, and forever will be, her separate income and property.

{¶ 27} Ordinarily, the classification of property as marital or separate constitutes a

question of fact.   See Wigal v. Wigal, Washington App. Nos. 06CA70 and 07CA10,

2008-Ohio-747, at ¶35.   Thus, appellate courts generally review the classification of property as

marital or separate under a manifest-weight-of-the evidence standard and will affirm if the

classification is supported by some competent, credible evidence. See id.

{¶ 28} R.C. 3105.171(C) and (D) require a court to equitably divide marital property

between the spouses.   "Marital property" includes retirement benefits of the spouses.   R.C.

3105.171(A)(3)(a)(i).   It does not, however, include any "separate property," which includes

"[c]ompensation to a spouse for the spouse's personal injury."   R.C. 3105.171(A)(3)(b) and

(6)(a)(vi).   Disability benefits constitute compensation received for personal injury.   Bakle v.

Bakle, Greene App. No.2009 CA 9, 2009-Ohio-6003, at ¶13, citing Ockunzzi v. Ockunzzi,

Cuyahoga App. No. 86785, 2006-Ohio-5741, at ¶64; see, also, Arkley v. Arkley, Jefferson App.

No. 03 JE 10, 2003-Ohio-7021, at ¶14, citing Bauser v. Bauser (1997), 118 Ohio App.3d 831,

835, 694 N.E.2d 136.   Thus, disability benefits do not constitute marital property unless "they

are accepted by the retiree in lieu of retirement pay, [in which case] they are marital property to

the extent that retirement pay value is included therein."   Elsass v. Elsass (Dec. 29, 1993),

Greene App. Nos. 93-CA-0005, 93-CA-0016, citing Principles and Guidelines for the Division of

Property in Actions for Divorce in Ohio (Mar.1981), 54 Ohio Bar 491.   The Elsass court

reasoned that "disability benefits * * * are a form of wage continuation designed to compensate

the recipient for wages that he would otherwise receive but for the disability."   Id.   It held,

therefore, that disability retirement benefits are not marital property subject to division unless the

recipient spouse has accepted them in lieu of old-age retirement pay, and then only to the extent

that such retirement pay value is included in the disability pension benefit.   Id.   When disability

benefits are accepted in lieu of retirement pay, "they are marital property to the extent that the disability benefit includes the retirement pay value." Messer v. Messer, Darke App. No. 1570, 2002-Ohio-4196, at ¶8. "On the date a spouse becomes eligible for retirement, the disability benefits being received, though not marital property per se, begin to represent retirement benefits to the extent that they equal the retirement benefits the spouse would receive but for his disability." Young v. Young, Clark App. Nos. 08CA59 and 08CA61, 2009-Ohio-3504, at ¶31, citing Motter v. Motter (July 27, 2000), Wyandot App. No 16-99-14.

{¶ 29} In the case sub judice, the trial court stated that it "accepts [Stoll's] analysis of disability income as replacement income until it transmutes into retirement income." The above cited cases are in accord with the trial court's finding. When appellant reaches retirement age, her disability benefits will represent retirement benefits to the extent that they equal the retirement benefits appellant would have received but for her disability. See Young at ¶31. Consequently, we do not believe that the trial court's finding is against the manifest weight of the evidence.[2]

{¶ 30} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

III

{¶ 31} In her third assignment of error, appellant contends that the trial court's decision to award her ten years of declining spousal support constitutes an abuse of discretion.

{¶ 32} "It is well-settled that trial courts enjoy broad discretion in awarding spousal

---

[2] We note that the trial court's divorce decree does not specifically award appellee any interest in appellant's retirement or disability benefits beyond stating that appellant's pension constitutes marital property.

support."    Breedlove v. Breedlove, Washington App. No. 08CA10, 2008-Ohio-4887, at ¶9,

citing Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83.    Trial courts are given

"wide latitude in determining the appropriateness, as well as the amount," of spousal support.

Bolinger v. Bolinger (1990), 49 Ohio St.3d 120, 122, 551 N.E.2d 157.    A court's decision to

award spousal support will not be reversed on appeal absent an abuse of discretion.    See

Bechtol.    Under the abuse of discretion standard of review, we must affirm the trial court's

decision unless it is unreasonable, arbitrary, or unconscionable.    Blakemore.    Under this highly

deferential standard of review, we may not simply substitute our judgment for that of the trial

court.    In re Jane Doe I. Rather, we are limited to determining whether the trial court acted

unreasonably, arbitrarily or unconscionably.    Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222,

459 N.E.2d 896, citing Blakemore, 5 Ohio St.3d at 218-20.

{¶ 33} R.C. 3105.18(C)(1) provides that, in determining whether spousal support is

"appropriate and reasonable, and in determining the nature, amount, and terms of payment, and

duration of spousal support," a court must consider the following factors:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b) The relative earning abilities of the parties;
> (c) The ages and the physical, mental, and emotional conditions of the parties;
> (d) The retirement benefits of the parties;
> (e) The duration of the marriage;
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
> (g) The standard of living of the parties established during the marriage;
> (h) The relative extent of education of the parties;
> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 34} When making a spousal support award, a trial court must consider all statutory factors and not base its determination upon any one of those factors taken in isolation. Kaechele at paragraph one of the syllabus. While a trial court possesses broad discretion regarding the determination of the appropriateness and reasonableness of an award of spousal support, it must consider the statutory factors enumerated above and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law. Kaechele at paragraph two of the syllabus. In the absence of a request for findings of fact and conclusions of law, however, Kaechele does not require the trial court to list and comment on each factor. Brown v. Brown, Pike App. No. 02AP689, 2003-Ohio-304, at ¶10. Rather, Kaechele and R.C. 3105.18(C) only require a trial court to reveal the basis for its award in either its judgment or the record. Id.; see, also, Carman v. Carman (1996), 109 Ohio App.3d 698, 704, 672 N.E.2d 1093.

{¶ 35} In the case sub judice, we do not believe that the trial court abused its discretion when it entered its spousal support award. First, with respect to appellant's argument that the trial court failed to articulate its reason underlying the spousal support award, we again observe

that appellant did not request findings of fact and conclusions of law.   In the absence of that

request, the trial court was not required to engage in a lengthy statutory analysis regarding its

spousal support award.   Second, the record contains sufficient evidence to support the trial

court's spousal support award.   Although appellee earns more money than appellant, appellant

receives disability income.   The trial court had no obligation to award appellant an amount of

spousal support to equalize the parties' incomes or to equal an amount that would enable her to

maintain the same lifestyle level that the parties enjoyed during their marriage.   See Leopold v.

Leopold, Washington 04CA14, 2005-Ohio-214, at ¶20.   The trial court could have rationally

concluded that appellant's disability income, coupled with the spousal support, would be

adequate in order for appellant to maintain an appropriate and reasonable standard of living.

Moreover, appellee presented at least some evidence that appellant, who, like appellee, is

highly-educated, might be capable of seeking at least part-time employment.   Both parties have

pension benefits to provide a means of support upon attaining retirement age.   Thus, appellant

will continue to have a source of income throughout her life.   Although the parties had a

long-term marriage, which could arguably justify an indefinite spousal support award,[3] the trial

court was not required to award appellant an indefinite spousal support award or a larger award.

Instead, the trial court may exercise its discretion to determine an appropriate and reasonable

amount of spousal support and need not follow any bright-line rule that a long-term marriage

automatically results in an indefinite award.

---

[3]   See Vanke v. Vanke (1994), 93 Ohio App.3d 373, 377, quoting Corpac v. Corpac (Feb. 27, 1992), Franklin App. No. 91AP-1036 ("[A] marriage of long duration 'in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of Kunkle.'"); see, also, Handschumaker v. Handschumaker, Washington App. No. 08CA19, 2009-Ohio-2239, at ¶21.

{¶ 36} In sum, we cannot conclude that the trial court abused its discretion by awarding appellant ten years of spousal support on a declining scale.   Additionally, we note that the trial court retained jurisdiction to modify spousal support, if necessary.

{¶ 37} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error.

IV

{¶ 38} In her fourth assignment of error, appellant asserts that the trial court erred by finding that appellant's condition "may be permanent" and that her physical condition might improve.   She contends that the record does not contain credible, competent evidence to support the trial court's finding.

{¶ 39} An appellate court "'has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge had an opportunity "'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"'" Corrigan v. Illuminating Co., 122 Ohio St.3d 265, 2009-Ohio-2524, 910 N.E.2d 1009, at ¶34, quoting State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶24, quoting Seasons Coal Co.. Furthermore, a reviewing court "'must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.'" Id., quoting Myers v. Garson (1993), 66 Ohio St.3d 610, 616, 614 N.E.2d 742.   Thus, we will not reverse a finding of fact so long as some competent, credible evidence supports the trial court's finding.   See, e.g., Lovett v. Carlisle, 179 Ohio App.3d 182, 2008-Ohio-5852, 901 N.E.2d 255, at ¶16, citing Sec. Pacific Natl. Bank v.

Roulette (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 492 N.E.2d 438.

{¶ 40} In the case at bar, we believe that the record contains some competent, credible evidence supports the trial court's finding that appellant's condition might improve. Some evidence also exists that appellant continues to enjoy an active lifestyle, despite her disability. She maintained the parties' former seven-acre marital residence and traveled on vacations. Furthermore, even assuming arguendo that the trial court's finding is against the manifest weight of the evidence as appellant asserts, appellant has not demonstrated how this allegedly erroneous finding affected the outcome of the trial court proceedings. She cannot demonstrate that a contrary finding would have resulted in the trial court entering any different decision regarding spousal support or the division of marital assets. Consequently, any error with this finding constitutes harmless error that we must disregard. See Civ.R. 61.

{¶ 41} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fourth assignment of error.

V

{¶ 42} In her fifth assignment of error, appellant asserts that the trial court erred by awarding her only $3,000 in attorney fees when appellee stipulated that $5,000 was a reasonable contribution toward payment of her fees.

{¶ 43} R.C. 3105.73(A) authorizes a trial court in a divorce action to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, a court may consider the parties'

marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

{¶ 44} An attorney fee award under this statute lies within the sound discretion of the trial court and, thus, its decision should not be reversed absent an abuse of discretion. See Basham v. Basham, Scioto App. No. 06CA3085, 2007-Ohio-3941, at ¶28.

{¶ 45} In the case at bar, we do not believe that the trial court abused its discretion by ordering appellee to pay $3,000, rather than $5,000, towards appellant's attorney fees. The trial court could have rationally concluded that the equitable result would be to order appellee to contribute $3,000 towards appellant's attorney fees. We believe that appellant's assertion that "[i]t was [s]tipulated that $5,000.00 was a reasonable contribution to [her] attorney's fees," does not accurately portray appellee's stipulation. During the final hearing, appellee did not stipulate that he would pay $5,000 towards appellant's attorney fees, but rather appellee's counsel stipulated that, as a general matter, $5,000 in a divorce case is not an unreasonable fee. Consequently, the trial court's $3,000 attorney fee award is not contrary to any purported stipulation that the parties entered.

{¶ 46} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fifth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

Abele, J., Kline, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

BY:_____
Roger L. Kline, Judge

BY:_____
Matthew W. McFarland, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.